UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

ALVAN MOTOR FREIGHT, INC.,                    Case No. 08-21909-dob
                                              Chapter 7 Proceeding
            Debtor.                           Hon. Daniel S. Opperman

_____/

Opinion Regarding Motion of Super Cartage Co., Inc. for Allowance and Payment of
Administrative Expenses Under 11 U.S.C. § 503(b)(1)

This matter is before the Court upon the Motion of Super Cartage Co., Inc. for Allowance

and Payment of Administrative Expenses Under 11 U.S.C. § 503(b)(1). Samuel D. Sweet, the

Chapter 7 Trustee in this case, objected to the Motion of Super Cartage. The Court conducted an

evidentiary hearing on the Motion of Super Cartage on August 17, 2009, and took this matter under

advisement.

Statement of Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This

is a core proceeding under 28 U.S.C. § 157(b)(2).

Findings of Fact

Super Cartage Co., Inc. ("Super Cartage") offered the testimony of two individuals, John

Staggs and Ted Dawson. Mr. Staggs testified that he has been President of Super Cartage since

1983 and has been involved in the trucking industry for decades. The Court finds that Mr. Staggs

is an extremely knowledgeable and experienced individual in the trucking industry. Mr. Staggs

testified that Super Cartage had an agreement with the Debtor, Alvan Motor Freight, Inc. ("Alvan"),

in which Alvan would have goods consigned to Alvan delivered to the Super Cartage facility in

1

Chicago. Super Cartage would then take these goods and deliver the goods to a destination directed by Alvan and also pick up goods as identified by Alvan for delivery back to the Super Cartage terminal. After delivery to the Super Cartage facility in Chicago, the goods would then be transported by Alvan, or its agents, to another terminal for delivery to the end location. In return, Super Cartage received 36% of the invoice generated by Alvan, regardless of whether Alvan was paid or not. Mr. Staggs also testified that although the agreement at one time had been reduced to writing, that writing is now lost and unavailable for review.

Mr. Staggs testified that on June 29, 2008, he received a call from Mr. Van Zoeren, the President of Alvan at the time. Mr. Van Zoeren explained to him that Alvan was experiencing economic difficulty and had just filed bankruptcy. Mr. Staggs testified that he told Mr. Van Zoeren that Super Cartage would continue to deliver and pick up goods as needed, primarily to alleviate Mr. Van Zoeren's concern that goods would not be held up in the Super Cartage facility. In return, Mr. Staggs believed that Alvan would continue to pay the 36% typically billed and paid by Alvan to Super Cartage.

From June 30, 2008, through July 2, 2008, Super Cartage delivered goods present at the Super Cartage facility and likewise picked up product designated for pick up. On July 2, 2008, Mr. Staggs found out that Alvan no longer was in operation and that Central Transport had taken over the duties and obligations of Alvan. Since Super Cartage had problems with Central Transport in the past, it elected not to continue its arrangement with both Alvan and with Central Transport. At the hearing, delivery receipts on Alvan documents evidencing the delivery of items by Super Cartage were admitted as Exhibits 5 through 113. Also admitted were Exhibits 115 through 329 consisting of manifests, delivery receipts, bills of lading, and other documents evidencing the pick up of goods

by Super Cartage and the loading of those goods onto Central Transport and Alvan trailers.

Mr. Staggs also testified that the determination of the charge for transporting goods is based on approximately 17 factors, the most noteworthy being distance, weight, and commodity type. Mr. Staggs also testified that various carriers offer discounts on a regular basis and greater discounts if the sales department of a trucking concern negotiate a reduced rate with approval of the management of the trucking company. It is impossible for a party to determine the actual amount charged by a transportation company for the delivery of goods unless this vital information is known.

Mr. Dawson testified that he was the controller for Super Cartage for approximately 15 years and that he left Super Cartage on December 31, 2008. Prior to his departure, Mr. Dawson reviewed records of Super Cartage regarding Alvan and prepared reports as to the status of the Alvan account with Super Cartage. In particular, Mr. Dawson prepared a report that took into account at least two variables, namely commodity type and weight to calculate the $17,927.73 claimed owed to Super Cartage by Alvan. In reaching this calculation, Mr. Dawson took into account the average bill generated 13 weeks prior to June 23, 2008. Per Mr. Dawson's calculations, there were 189 outbound bills of lading with an average value of $43.97 for a total of $8,310.33 and 234 inbound freight bills at the average rate of $41.10 for a total of $9,617.40 for an aggregate total of $17,927.73. Mr. Dawson also testified that in his view the average bill generated by Super Cartage to Alvan had remained constant over the last few years.

On cross-examination, Mr. Staggs admitted that had Super Cartage not delivered goods then the owner would have arranged for an expediter to pick up the goods at the Super Cartage facility and then charge that cost back to Alvan. Mr. Staggs testified that the amount charged would quite often be the total freight amount, but was unable to testify as to the dollar amount involved for the

3

property that was located at the Super Cartage terminal from June 30, 2008, through July 2, 2008.

Mr. Staggs also testified that Mr. Lesley from Alvan called him and told him that Central Transport

would begin picking up the Alvan freight as early as June 30, 2008. Mr. Staggs also testified that

the customers would not talk to either him or anyone from Super Cartage about the delivery of goods

and that he had no way of determining the amount charged by Alvan to its customers or whether

those customers had paid various bills. Mr. Staggs admitted that the major components of

determining a total bill to a customer, namely distance, weight, and commodity type, were not taken

into account with the claim made by Super Cartage in this case. Finally, Mr. Staggs admitted that

the claim made by Super Cartage in this case was not related to the actual costs that Alvan billed or

could have billed.

Analysis

11 U.S.C. § 503(b)(1) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other
than claims allowed under section 502(f) of this title, including —

(1)(A) the actual, necessary costs and expenses of preserving the estate, . . . .

The Sixth Circuit Court of Appeals has long held that administrative expense claims are

strictly and narrowly construed. *City of White Plains, N.Y. v. A&S Galleria Real Estate, Inc. (In re

Federated Dep't Stores, Inc.),* 270 F.3d 994, 1000 (6th Cir. 2001); *United Trucking Serv., Inc. v.

Trailer Rental Co., Inc. (In re United Trucking Serv., Inc.),* 851 F.2d 159, 164 (6th Cir. 1988). In

the Sixth Circuit, in order to award an administrative expense status, this Court is required to

determine if there is a benefit to the estate. *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc.

(In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997). In order to be an actual and

necessary administrative expense, the obligation must: (1) arise from a transaction with the

4

bankruptcy estate; and (2) directly and substantially benefit the estate. *Id. at 816*. The burden of proof to establish an administrative expense is on the party requesting that treatment. The requesting party must meet a preponderance of the evidence standard. *In re Cardinal Indus., Inc.,* 151 B.R. 838, 841 (Bankr. S.D. Ohio 1992) (citing *In re Englewood Community Hospital Corp.*, 117 B.R. 352, 358 (Bankr. N.D. Ill. 1990); *In re 9085 E. Mineral Office Building, Ltd.,* 119 B.R. 246, 249 (Bankr. D. Colo. 1990); *In re Patch Graphics*, 58 B.R. 743, 746 (Bankr. W.D. Wis. 1986).

In this case, two possible benefits to the estate exist. First, Super Cartage avoided potential claims against the estate by delivering and picking up consigned goods in the greater Chicago area. Second, Super Cartage contributed services that would ostensibly allow Alvan to bill customers with Super Cartage receiving 36% of those proceeds.

As for the first potential benefit, it is uncontroverted that Alvan received a benefit in that goods for which it had a contractual obligation to deliver and pick up were in fact delivered and picked up. That being said, there is no testimony in the record to establish the value of that benefit or that Alvan faced demands by its customers for deliveries and pick ups. First, Mr. Staggs did testify that if a product that was subject to a just-in-time inventory delivery was running late, then an expediting service would come and pick up that product and charge a rate for that service. After reviewing Mr. Staggs' testimony, however, there was no testimony to establish the amount of that service, either at a flat dollar amount or a percentage of an unknown billing rate. Likewise, the testimony of Mr. Dawson did not shed any light as to the cost of the delivery and pick up of products by anyone, much less an expediter. The Court, therefore, concludes that movant failed to establish the amount Alvan avoided incurring through Super Cartage's actions.

As to the second potential benefit, there is no evidence before the Court that Alvan has billed

5

any of the customers identified by Super Cartage. In closing argument, counsel for the Trustee indicated that the Trustee did not intend to bill for these services as an arrangement had been made between Central Transport and Alvan. Accordingly, Super Cartage is unable to show any benefit to the estate in the form of additional collections that would run in favor of unsecured creditors. Ironically, if this Court were to hold that Super Cartage is entitled to an administrative claim, then unsecured creditors would receive less, not more, as a result of the actions of Super Cartage.

The Court is, however, troubled by the possibility of the Trustee subsequently billing and collecting for these services. To the extent that the estate does ever try to collect for these services, then Super Cartage will be allowed to re-file its motion for payment of administrative expenses.

Moreover, the Court notes that nothing in this Opinion or the Court's Order should be construed as a surrender by Super Cartage of any claim that can be made against Central Transport or any of the customers for which Super Cartage performed services. The record before the Court does reflect efforts taken by Super Cartage to deliver and pick up various goods for which Super Cartage would normally be entitled to be paid. While this Court decides that Super Cartage is not currently entitled to an administrative claim in this bankruptcy case, this Opinion should not be construed as a finding that others are not responsible for the value of the efforts made by Super Cartage from June 30, 2008, through July 2, 2008.

The Court finds that Super Cartage failed to meet its burden of proof of showing the value of any benefit to the estate. As to whether Super Cartage's efforts eliminated or reduced any claims for late delivered or picked up goods, the record is insufficient to establish the value placed upon the costs for that failure. To the extent that Super Cartage's efforts may have resulted in additional monies for the estate, there is no evidence before the Court that the Trustee has collected any of

6

these monies or that the Trustee will collect any of these monies.

The Court, therefore, concludes that Super Cartage failed to meet its burden of proof in regard to the value of the services given by it to the estate. Accordingly, the Court denies the Motion of Super Cartage for designation as administrative claim, subject to the limitations set forth in this Opinion.

Counsel for the Trustee is directed to prepare an order consistent with this Opinion.

.

**Signed on September 11, 2009**

                                  **/s/ Daniel S. Opperman**
                                   **Daniel S. Opperman**
                                   **United States Bankruptcy Judge**